UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

CLIFTON GIBBON,

                                       Plaintiff,

            -against-

CITY OF NEW YORK,

                                       Defendant.

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

07 CV 6698 (NRB)

------------------------------------------------------------------- x

       Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendant, by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submits that the following material facts are not in dispute.

       1.      Plaintiff was employed as a Seasonal Assistant City Highway Repairer ("ACHR") for the New York City Department of Transportation ("NYCDOT") beginning in April of 2001. Exhibit "A," Pl. Dep. at 13, 17; Exhibit "B," Plaintiff's Appointment Form; Exhibit "C," Plaintiff's NYC Payroll Management System Employee Description and Record Change History Screen Printouts.[1]

       2.      Seasonal ACHRs are appointed at the beginning of the highway paving season and terminated at the conclusion of the paving season; the season usually begins in March and ends in December. Exhibit "A," Pl. Dep. at 13, 29-30; Exhibit "D," Seasonal ACHR memorandum of Agreement.

---

[1] The exhibits referred to herein are annexed to the Declaration of Assistant Corporation Counsel Jason Friedman, dated May 14, 2008.

3. Seasonal ACHR's must possess and retain a valid Class B Commercial Drivers License ("CDL") as a condition of employment. See Exhibit "E," NYC Department of Citywide Administrative Services ("DCAS") Job Specifications for ACHR title.

4. Thus, persons employed as Seasonal ACHR's are considered to be employed in "safety sensitive" positions. Employees holding "safety sensitive" positions are subject to pre-employment drug testing. Exhibit "F," NYCDOT Controlled Substance Policy, at 2, 5; Exhibit "A," Pl. Dep. at 29-32.

5. The drug testing policies of NYCDOT are based on the requirements of the U.S. Department of Transportation ("USDOT") and the Federal Motor Carrier Safety Administration ("FMCSA"). Responding to the Omnibus Transportation Employee Testing Act of 1991 the FMSCA has promulgated regulations prohibiting drug use and alcohol misuse by employees who hold commercial driver's licenses ("CDL") and perform safety sensitive tasks. These regulations are found at 49 CFR Part 382. The procedures for the drug tests of the employees in this class are promulgated by USDOT and located at 49 CFR Part 40. Exhibit "F," at 1.

6. Plaintiff was given a copy of NYCDOT's drug testing policies on or about April 9, 2001, upon his first appointment as a Seasonal ACHR. Exhibit "G," plaintiff's acknowledgment of receipt.

7. Plaintiff, as a Seasonal ACHR and a holder of a CDL, was required to pass pre-employment drug tests every season before being re hired to his seasonal position. Exhibit "A," Pl. Dep. at 17; Exhibit "F."

8. Plaintiff, as a Seasonal ACHR and holder of a CDL, was also subject to reasonable cause/suspicion, post-accident and random drug tests. See Exhibit "F," NYCDOT Controlled Substance Policy, at 2, 5-7; Exhibit "A," Pl. Dep. at 29-32.

9. Therefore, before being appointed as a Seasonal ACHR for the 2006 season plaintiff had to pass a pre-employment drug test administered at 40 Worth Street, NY, NY, on February 15, 2006. Exhibit "A," Pl. Dep. at 29, 30, and 62. Plaintiff was notified of this test on at the beginning of 2006. Exhibit "A," Pl. Dep. at 62, ln 10.

10. Plaintiff's pre-employment drug test began at approximately 9:18 am. Plaintiff was directed to a bathroom to provide a urine sample. Plaintiff was unable to provide the required 45ml of urine. The 45ml requirement is set forth by the USDOT regulations. 49 CFR § 40.193; Exhibit "H," Declaration of Rhay Sumler dated May 14, 2008 ("Sumler Decl.") and Tester Statement annexed to Sumler Decl.; Exhibit "A," Pl. Dep. at 42, 62.

11. Following plaintiff's initial inability to provide a 45ml urine sample and pursuant to the federal regulations, the insufficient amount was discarded and plaintiff was instructed to stay in the collection area and drink water. 49 CFR § 40.193(b); Exhibit "A," Pl. Dep. at 42-43; Exhibit "H," Sumler Decl and Tester Statement annexed to Sumler Decl. Plaintiff then had three hours to attempt provide an adequate sample. 49 CFR § 40.193(b); Exhibit "H," Exhibit "A," Pl. Dep. at 41-45, and 62-63.

12. Plaintiff was allowed to make an attempt to urinate whenever he felt the need during those three hours. Exhibit "A," Pl. Dep. at 62. At no time before or during the test did plaintiff make any requests for a new test day or time. Sumler. Decl. He was also given approximately 4 bottles of water. Exhibit "A," Pl. Dep. at 43, 62. Plaintiff made approximately 3-4 attempts at providing a urine sample during the three hours, but all of them were insufficient.

Exhibit "A," Pl. Dep. at 42-44; Exhibit "H," Sumler. Decl. and Tester Statement annexed to Sumler Decl.

13. Because plaintiff was unable to provide a 45ml urine sample within three hours of his first attempt, the test was discontinued. Pursuant to 49 CFR § 40.193(c), plaintiff was directed to obtain a medical examination to determine whether he had a medical condition which could have precluded plaintiff from providing a sufficient amount of urine. Exhibit "H," Sumler. Decl.; Exhibit "A," Pl. Dep. at 45-46, 63.

14. Plaintiff was directed to go to Westchester Medical Care PLLC for an examination on the afternoon of his test. Exhibit "A," Pl. Dep. at 47-48. However, plaintiff testified that he was unable to locate Westchester Medical Care PLLC on the afternoon of February 15, 2007 and ultimately arrived at the doctor's office after the doctor had left for the day. Exhibit "A," Pl. Dep. at 48-49. Plaintiff eventually reported to Westchester Medical Care PLLC for a medical examination on February 17, 2008, two days after his urine screening. Exhibit "A," Pl. Dep. at 48-50; Exhibit "I," Plaintiff's evaluation and urine test result from Westchester Medical Care.

15. At Westchester Medical Care, plaintiff provided blood and urine samples for testing. He also was given a digital rectal exam of his prostate. Exhibit "I;" Exhibit "A," Pl. Dep. at 54-57.

16. Plaintiff's urine test results indicated that his kidney's were functioning at a normal level and the examining physician noted that plaintiff's prostate was smooth and "slightly enlarged." Exhibit "I."

17. Based on the examination at Westchester Medical Care, Jeffrey Altholz MD, the Medical Review Officer ("MRO") for Clarity Testing Services, the contracted drug

testing service for the NYCDOT, determined that no acceptable alternative medical explanation for plaintiff not providing a urine specimen the drug test existed. Therefore plaintiff's test result was deemed as a refusal to test. 49 C.F.R. §§ 40.193(d)(2)(i); Exhibit "J," letter from Dr. Altholz dated February 24, 2006 Anna Budd and Results of DOT Controlled Substance Test.

18. NYCDOT's drug testing states that "a positive result shall include a refusal to test." See Exhibit "F" at 5, 10, 11.

19. In a letter dated March, 10, 2006, plaintiff was notified that at his medical evaluation no legitimate medical condition was found that would have prevented production of sufficient urine sample. Therefore he was not qualified for the position of Seasonal ACHR because his refusal to test was considered a positive test under NYCDOT Regulations. Plaintiff was notified that this decision could be appealed in writing by his physician. Exhibit "K," March 10, 2006, Jean Frankowski letter to plaintiff.

20. Plaintiff's physician, Dr. Bharara, submitted a letter dated March 8, 2006, to NYCDOT which states that plaintiff "has benign prostatic hyperplasia ["BPH"] which causes problems with urination." Exhibit "L," Dr. Bharara's letter dated March 8, 2008..

21. Dr. Bharara submitted another letter to NYCDOT dated March 22, 2006. This letter re-stated that plaintiff has BPH ("benign prostatic hyperplasia") and that plaintiff commenced taking the medication Flomax on February 18, 2006 and can urinate comfortably and take a drug test. Exhibit "M," Dr. Bharara's March 22, 2006, letter.

22. Plaintiff has testified that Flomax helps him urinate easier. Exhibit "A," Pl. Dep. at 38, 39. Plaintiff had been previously prescribed Flomax in December of 2005. Plaintiff testified that he ran out of the pills approximately 2 or 3 days before his scheduled pre employment drug test on February 17, 2006. Exhibit "A," Pl. Dep. at 38, 39.

23. Plaintiff has testified that when he was taking Flomax, he did not have problems urinating. Exhibit "A," Pl. Dep. at 39. Plaintiff has further testified that when he stopped taking Flomax, he might have to wait four to five minutes before being able to urinate. Exhibit "A," Pl. Dep. at 39-40, 61.

24. Plaintiff also testified that having BPH did not effect his everyday life and that it never effected him at work. Exhibit "A," Pl. Dep. at 61.

25. In a letter dated March 23, 2006 to NYCDOT, Dr. Altholz explained that he had received the March 22, 2006, letter from Dr. Bharara. Dr. Altholz reviewed and carefully considered the information provided in Dr. Bharara's letter and determined that no valid medical explanation was offered and it did not provide him with a basis to change his prior conclusion that plaintiff's test should be deemed a refusal to test. Exhibit "N," Dr. Altholz's March 23, 2006, letter.

26. In a letter dated March 31, 2006, Jean Frankowski, the Director of Personnel for the NYCDOT, notified plaintiff that his status of not qualified for the position of Seasonal ACHR would stand despite the letters from his doctor based upon the review of Dr. Altholz, the NYCDOT MRO. Exhibit "O," Frankowski letter dated March 31, 2006.

27. Plaintiff subsequently visited Dr. Marlene Corujo, a urologist who examined him for an evaluation of his lower urinary tract symptoms which plaintiff described as urgency, frequency, hesitancy and weak flow of urination. Dr. Corujo found that while plaintiff may have BPH, it does not explain why he was unable to submit a urine test when requested. Exhibit "P," June 16, 2006, letter from Dr. Corujo.

Dated:      New York, New York
            May 14, 2008

                            MICHAEL A. CARDOZO
                            Corporation Counsel of the
                               City of New York
                            Attorney for Defendant
                            100 Church Street, Rm. 2-143
                            New York, New York 10007
                            (212) 788-1328
                            jfriedma@law.nyc.gov

By: _____
            Jason Friedman
            Assistant Corporation Counsel