UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

CLIFTON GIBBON,                                    07 Civ. 6698 (NRB)

        Plaintiff,

  - against -

CITY OF NEW YORK,

        Defendant.

---------------------------------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff
275 Seventh Avenue - 17th Floor
New York, New York 10001
(212) 228-6320

## TABLE OF CONTENTS

Page

FACTS ................................................................. 2

ARGUMENT ............................................................ 4

    I.     A REASONABLE JUROR COULD FIND THAT THE SUBSTANTIAL LIMITATION OF PLAINTIFF'S ABILITY TO URINATE IS A DISABILITY UNDER THE ADA ........................ 4

    II.    A REASONABLE JUROR COULD FIND DEFENDANT'S POLICY REGARDING BPH TO BE UNREASONABLE ................. 10

CONCLUSION .......................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CLIFTON GIBBON,                                                     07 Civ. 6698 (NRB)

          Plaintiff,

- against -

CITY OF NEW YORK,

          Defendant.

------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Clifton Gibbon ("Gibbon") submits this memorandum of law in opposition to the motion of defendant City of New York ("City") for summary judgment. Gibbon, despite herculean efforts, was simply unable to urinate for a drug test due solely to his disability, benign prostatic hyperplasia ("BPH"). The City, in violation of its responsibilities under the Federal drug testing regulations, in violation of fundamental medical precepts, and, most importantly, in violation of the antidiscrimination laws, refused as a matter of policy to even consider accommodating Gibbon's disability. The City's policy, per se excluding BPH as a disability which must be accommodated, is unlawful pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, Executive Law §290 et seq. ("NYSHRL"), and the Administrative Code of the City of New York, § 8-101 et seq. ("NYCHRL"). Defendant's motion should be denied.

FACTS

Gibbon was employed as an Assistant City Highway Repairer ("ACHR") for the New York City Department of Transportation ("DOT") beginning in April 2001. Declaration of Jason Friedman ("Friedman Dec."), Exs. B, C. An ACHR repairs and maintains roadways by laying asphalt and concrete, filling potholes with tar, and building foundations. Id., Ex. E.

In 2005, Gibbon began to experience great difficulty urinating. He felt his bladder fill with urine, but he could not urinate. This inability to urinate would last anywhere from a few minutes to four hours. Declaration of Clifton Gibbon ("Gibbon Dec.") ¶ 2. On June 15, 2005, Gibbon consulted his physician, Meenakshi Bharara, M.D., who diagnosed Gibbon with BPH. Declaration of Stuart Lichten ("Lichten Dec."), Ex. B. BPH is a disease involving the enlargement of the prostate gland. As the prostrate enlarges, the gland may obstruct the urethra, causing acute urinary retention, an inability to urinate. Lichten Dec., Ex. C.

In late 2005, DOT selected Gibbon for a random drug test. Although Gibbon was the second person to be tested, he was the last to leave because he was unable to urinate on demand. Lichten Dec., Ex. A ("Gibbon Dep."), at 37. Gibbon could feel his bladder "full with urine to give them the urine," but "when I go to the bowl . . ., the urine just wouldn't come out." Id., at 33. As Gibbon described the test, "I go over the bowl and the urine [would] just take time, start to trickle, take time coming out, coming out, until it eventually just built up and started to come out [in] force. And I filled up the container . . .." Id., at 37.

On November 18, 2005, Gibbon again visited Dr. Bharara, who ascribed the difficulty providing a sample to BPH. Lichten Dec., Ex. B, at 2. The doctor prescribed Flomax, which has

2

been found in some cases to relieve the symptoms of BPH. Dr. Bharara advised Gibbon that if the Flomax was ineffective, she would refer Gibbon to a urologist. Gibbon Dep., at 38.

Gibbon took the medication for a short time, but could not refill the prescription because DOT laid him off in December 2005, leaving Gibbon without medical coverage. Lichten Dec., Ex. D; Gibbon Dec., at ¶¶ 5, 7. On February 15, 2006, Gibbon appeared for another drug test. At that time, Gibbon's prescription for Flomax had expired, and Gibbon was still experiencing extreme difficulty urinating. Gibbon Dec., at ¶ 6. When he attempted to provide a sample for the examination, although his bladder was "full with the urine," and he felt like the urine was going to "tear out," Gibbon was able to produce some urine but less than the required 45 milliliters. Gibbon Dec., at 42-43; Declaration of Rhay Sumler ("Sumler Dec.") ¶ 6. Gibbon tried unsuccessfully three more times to urinate. Gibbon Dep., at 43-44; Sumler Dec., at ¶ 9. Ultimately, Gibbon urinated on himself at the Flushing train station after he left the DOT offices. Gibbon Dep., at 46.

DOT sent Gibbon to be examined by Michelle Bonamassa, a physician's assistant. Bonamassa also diagnosed Gibbon with BPH. Friedman Dec., Ex. I; Gibbon Dep., at 55-57. According to DOT, however, "it is irrelevant whether or not [Gibbon] has been diagnosed with [BPH]. Even if he has been so diagnosed, the diagnosis does not provide an adequate explanation for his failure to provide an adequate urine sample . . .." Lichten Dec., Ex. E, at 2. According to DOT, individuals with obstructions of the urinary tract "produce normal urine output." Id., at 5. The agency therefore ignored Gibbon's diagnosis, rejected Dr. Bharara's opinion that Gibbon's failure to urinate was due to BPH, Friedman Dec., Ex. L, deemed

3

Gibbon's excruciating efforts at urination as a "refusal," and discharged Gibbon on March 10, 2006. Friedman Dec., Ex. K.

## ARGUMENT

I.  A REASONABLE JUROR COULD FIND THAT THE SUBSTANTIAL LIMITATION ON PLAINTIFF'S ABILITY TO URINATE IS A DISABILITY UNDER THE ADA.

The significant impairment of Gibbons's ability to urinate is a disability under the ADA. The City does not dispute that Gibbons is disabled as defined by the NYSHRL and NYCHRL. Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") 9; see, Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 145 (2d Cir. 1998). Defendant does contend that Gibbon, as a matter of law, is not disabled as defined by the Federal statute.

The ADA defines "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual . . . ." 42 U.S.C. § 12102(2)(A). EEOC regulations define "physical impairment" as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: . . . genito-urinary . . . ." 29 CFR § 1630.2(h)(1). "Major life activities" include, under the regulations, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing . . . ." 29 CFR § 1630.2(i). "[T]his list . . . is meant to be illustrative and not exclusive." Reeves, 140 F.3d, at 150. Those rules also define "substantially limited" as, inter alia, "[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration

under which the average person in the general population can perform that same major life activity." 29 CFR § 1630.2(j)(1)(ii). Plaintiff's BPH significantly restricts Gibbon's ability to urinate, compared with the average person.

Whether a plaintiff is disabled is a question of fact for the jury. Capobianco v. City of New York, 422 F.3d 47, 54-55, 58-60 (2d Cir. 2005). The party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The motion must be denied unless "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court's role is not, therefore, "to come to a decision as to whether [plaintiff] was disabled under the ADA. Rather, [the Court] only need decide whether a rational jury, viewing the evidence in the light most favorable to the plaintiff[], could come to such a decision." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 438 (7th Cir. 2000)(citation omitted). "[W]here a plaintiff puts forth sufficient evidence, the question [must] be submitted to a jury." Canis v. Coca-Cola Enterprises, 49 F. Supp. 2d 73, 79 (D.R.I. 1999)(citation omitted). A rational juror could find that Gibbon is disabled.

This Court has held that a disability affecting an employee's ability to urinate constitutes a disability under the ADA. Kinneary v. City of New York, 536 F. Supp. 2d 326, 331 (S.D.N.Y. 2008). In that case, the plaintiff was diagnosed with paruresis, a "'medical/psychological condition in which a person is unable to urinate on demand.'" Id., at 329 & n.4 (quoting

5

Plaintiff's Complaint 3). He therefore was unable to provide a urine sample for a random drug test. The employer, the City, dismissed the plaintiff, and he filed an action pursuant to the ADA, the NYSHRL, and the NYCHRL, alleging discrimination "based on a disability of paruresis." 536 F. Supp. 2d, at 329.

The jury rendered its verdict in favor of the plaintiff, awarding him $100,000 in backpay and an additional amount in non-economic damages. Id., at 330. The City moved for judgment as a matter of law, alleging among other grounds the plaintiff's "inability to establish a prima facie case . . . ." This Court "determined that reasonable and fair minded jurors could have found for [the plaintiff] on his discrimination claim and that he was entitled to the various types of damages awarded by the jury," and denied the City's motion. Id., at 331.

One Court of Appeals specifically considered whether BPH is a disability under the ADA. Hall v. Claussen, 2001 U.S. App. LEXIS 3404 (10th Cir. Mar. 6, 2001). The plaintiff was diagnosed with BPH by a physician. Id., at *5. The jury found that the plaintiff "was an individual with a disability" as defined by the ADA. Id., at **8, 15-17. The appellate court affirmed the denial of the defendant's motion for judgment as a matter of law, concluding "that the evidence is sufficient to support his contention that his urological condition" substantially impaired a major life activity. Id., at *26. See also, Roush v. Weastec, Inc., 96 F.3d 840, 844 (6th Cir. 1996)(reversing summary judgment; plaintiff "created an issue of material fact" as to whether bladder condition substantially limits major life activity).

For the past three years, Gibbon's ability to urinate has been impaired. Gibbon Dec., at ¶ 3.

> I feel my [bladder] full with the urine . . ., when I go to the bowl [and] free up myself, the urine just would't come out.
>
> . . .
>
> [W]hen I go over to the bowl to urinate, no urine can't come out, [my bladder] is full with the urine.
>
> . . .
>
> . . . I never used to have those problems before, so I say there must be a problem, so I said there must be something wrong with me.

Gibbon Dep., at 30, 33, 37. Gibbon's impairment can last anywhere from several minutes to many hours. Gibbon Dec., at ¶ 2.

> Man, it's not a pretty nice thing, you know, your [bladder] full with the urine, you really want to go but the urine just wouldn't come out and me stand up in the bathroom for about maybe hour-and-a-half, you know, at the bowl.
>
> Q:   At the doctor's office, you were in the bathroom for about an hour-and-a-half?
>
> A:   Yes, me stand up there long time. [I] stand up at the bowl, man, with my dick out over the bowl with the cup and the urine couldn't come out. It's sort of embarrassing, you know, and the urine couldn't come out.

Gibbon Dep., at 56. Gibbons's disability continues to this day, regularly affecting him every week. Gibbon Dec., at ¶¶ 3, 8.

> [W]hen [I] go in and go now to the bowl to pee, [I] have to stand up maybe four, five minutes before the urine come out . . . .
>
> . . .
>
> [I]t comes and goes . . . . [I] would go to the bathroom, . . . just go to urinate and if it don't come, [I] just stand up and wait until it come.
>
> . . .

> Because when I'm on the job, right, out in the field cutting and [I] feel like [I] want [to] urinate, . . . you have to find a little place where nobody can see you, [I] take out my, you know, to urinate. It no come. [I] just fix up back myself and [I] just start work again. [I] feel like [I] want [to] go again, [I] go hide again and it no come, [I] just put up back my--and [I] just go work again . . . .

Gibbon Dep., at 40, 60-61. A rational juror could find that Gibbon's ability to urinate is significantly impaired.

Defendant also argues that Gibbon is not disabled, under the ADA, because his condition "can be managed by medication." Def. Mem., at 6. The Supreme Court has held, however, that a determination of whether a person is disabled should be based on the individual's actual circumstances, not what "can" happen or is theoretically possible. Due to his lack of health coverage, Gibbon has taken medication only sporadically over the past several years. While the effects of this medication must be considered, Gibbons's history reveals that his impairment has persisted. Under the Supreme Court's analysis, the factfinder cannot base its decision on what "might" have happened had Gibbon been able to afford medication for the entire period, but rather must look at what in fact transpired.

"[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999)(emphasis added).

> Because the phrase "substantially limits" appears in the Act in the present indicative verb form, we think the language is properly read as requiring that a person be presently--not potentially or hypothetically--substantially limited in order to demonstrate a disability. A "disability" exists only where an impairment

"substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken.

Id. The factfinder therefore must conduct an "individualized inquiry," and not "speculate about a person's condition . . . based on general information . . ., rather than on the individual's actual condition." Id., at 483. "The use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting." Id., at 488 (emphasis in original).

The determination here therefore must be based on Gibbon's actual medical history, in the course of which he could only afford Flomax for a few months over the past several years. Lichten Dec., Ex. D, at 1 ("patient not taking Flomax because he didn't have medical coverage"), 2 ("patient has no coverage"); Ex. F ("two episodes . . . where he was not on Flomax and unable to give urine specimen;" recommendation to "restart Flomax"); Friedman Dec., Ex. I (Gibbon given medication "for a short time"). On May 12, 2006, Gibbons's urologist noted that his symptoms were "still present despite Flomax." Lichten Dec., Ex. B, at 4. BPH and acute urinary retention were noted in a medical examination on September 12, 2007. Lichten Dec., Ex. B, at 5. The factfinder cannot speculate on what Gibbon's condition might be, or might have been, had he taken the medication every day. Whether Gibbon is disabled turns on whether his ability to urinate is actually impaired, not whether it might have been mitigated had he taken some hypothetical corrective actions.

A reasonable juror could find that Gibbon's ability to urinate is significantly restricted compared to the average person. Sometimes Gibbon cannot urinate at all; sometimes he needs several attempts. Lichten Dec., Ex. B; Gibbon Dec., at ¶ 2; Gibbon Dep., at 30, 33, 37, 56.

Gibbon occasionally, after being unable to urinate for hours, urinates on himself. Gibbon Dep., at 46, 56. BPH seriously disrupts Gibbons's life on a regular basis. Gibbon Dec., at ¶ 3; Gibbon Dep., at 40, 60-61. A dispute of fact exists regarding whether Gibbon is disabled under the ADA.

II.     A RATIONAL JUROR COULD FIND DEFENDANT'S POLICY REGARDING BPH TO BE UNREASONABLE.

An employer must reasonably accommodate disabled employees. 42 U.S.C. § 12112(b)(5)(A); see, Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997). Defendant claims to have merely been following Federal regulations when it deemed Gibbon's inability to urinate a "refusal to test." Def. Mem., at 11. DOT's per se rule regarding BPH, however, is not consistent with either those regulations or the ADA. If DOT had followed a reasonable interpretation of the regulations, Gibbon would not have been dismissed.

The Federal regulations contain within them a provision accommodating disabilities. A failure to provide a urine specimen, pursuant to the Federal drug-testing rules, is not considered a refusal when "a medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of urine." 49 CFR § 40.193(d)(1). A "medical condition includes an ascertainable physiological condition (e.g., a urinary system dysfunction) . . . ." 49 CFR § 40.193(e). DOT arranged for Gibbon to be examined by a physician's assistant, who concurred with the diagnosis of BPH. Friedman Dec., Ex. I. The agency's Medical Review Officer, who is not a urologist, stated, however, without explanation, that "no acceptable alternative medical explanation was discovered." Friedman Dec., Ex. J.

DOT later explained that, in the agency's view, "it is irrelevant whether or not complainant has been diagnosed with the condition stated in his complaint. Even if he has been so diagnosed, the diagnosis does not provide an adequate explanation for his failure to provide an adequate urine sample . . .." Lichten Dec., Ex. E, at 2. According to DOT, "even individuals with obstructions of the urinary tract--e.g., a male with an enlarged prostate--produce normal urine output . . .." Id., at 5. Gibbon's undisputed diagnosis of BPH, therefore, was not even considered by DOT.

DOT's bright-line policy is simply not based on medical science. One court has found "irrational" as a matter of law an agency's determination that an employee with BPH "refused" a drug test. Transport Workers Union, Local 100 v. New York City Transit Auth., 17 Misc. 3d 1132(A), 2007 WESTLAW 4170851 (Sup. Ct., Kings Cty. Nov. 27, 2007). In that case, the petitioner was unable to provide a sufficient urine specimen at a random drug test. 2007 WESTLAW 4170851, at *1. Two licensed urologists both stated that the petitioner's BPH "could be a basis for failing to provide a sufficient urine sample . . .." Id., at **2, 7. The employer's medical review officer disagreed. The Court held, "This is an irrational finding," and ordered the employee reinstated. Id., at *7.

Gibbons's internist concluded that BPH was the cause of Gibbons's inability to urinate. Friedman Dec., Ex. L. A board-certified urologist offered his expert opinion "that the BPH could prevent the patient from producing an adequate urine specimen on demand." Lichten Dec., Ex. G. A urologist who examined Gibbons, Marlene Corujo, M.D., concluded that Gibbons's "dysfunction" was "related to BPH" or to another bladder-related disability. To be certain which of the two conditions was the cause, Corujo suggested that if Gibbons continued to be "unable to void," that a special test "can be performed to determine if this is due to bladder obstruction from

11

BPH . . .." Lichten Dec., Ex. F. And the National Kidney and Urologic Diseases Information Clearinghouse explains,

> As the prostate enlarges, the layer of tissue surrounding it stops it from expanding, causing the gland to press against the urethra like a clamp on a garden hose. The bladder wall becomes thicker and irritable.
>
> . . .
>
> Many symptoms of BPH stem from obstruction of the urethra and gradual loss of bladder function, which results in incomplete emptying of the bladder. The symptoms of BPH vary, but the most common ones involve changes or problems with urination, such as
>
> - a hesitant, interrupted, weak stream
> - urgency and leaking or dribbling
> - more frequent urination, especially at night
>
> . . . Some men . . ., whose glands are less enlarged, have more blockage and greater problems.
>
> Sometimes a man may not know he has any obstruction until he suddenly finds himself unable to urinate at all.

Lichten Dec., Ex. C, at 3-4.

DOT's refusal to consider BPH as a medical condition which might cause difficulty in urination is not a reasonable interpretation of the medical evidence, and constitutes a failure to reasonably accommodate a disability. EEOC regulations require an employer to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 CFR § 1630.2(o)(1)(ii). Summary judgment cannot be granted if "a reasonable jury could find that with reasonable accommodation the plaintiff could perform the essential functions of the

job . . ..." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 217 (2d Cir. 2001). "[Q]uestions of fact on the reasonableness of the requested accommodation . . . preclude an award of summary judgment." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 121 (2d Cir. 2004).

    The accommodation required here is merely to follow the Federal regulations in good faith, and consider BPH as a medical condition that could preclude providing a sufficient urine sample. In that case, if an employee cannot urinate due to BPH, then the regulations provide that the agency may use alternative tests, such as blood, hair, or saliva. 49 CFR 40.195(b). The reasonable accommodation, in defendant's words, is "interwoven with the regulation in order to accommodate people in situations like plaintiff." Def. Mem., at 8. All that defendant must do is apply that accommodation to plaintiff.

    DOT, by contrast, has arbitrarily carved out one disability from this accommodation provision, without either legal sanction under the regulations, or medical justification in the scientific literature. The agency is discriminating against all employees with BPH, and specifically in this instance Gibbon, by not even considering the Federal regulations' applicability to these employees. A reasonable juror could find that DOT has not reasonably accommodated Gibbon's disability.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that defendant's motion for summary judgment be denied.

Dated: New York, New York
      June 2, 2008

 

_____
Stuart Lichten (SL-1258)
SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff
275 Seventh Avenue - 17th Floor
New York, New York 10001
(212) 228-6320

14